DAYTON BAR ASSOCIATION *v.* HUNT.

[Cite as *Dayton Bar Assn. v. Hunt,* 135 Ohio St.3d 386, 2013-Ohio-1486.]

*Attorney misconduct, including engaging in conduct involving dishonesty, handling a legal matter without adequate preparation, and neglecting an entrusted legal matter—Indefinite suspension.*

(No. 2012-1694—Submitted January 23, 2013—Decided April 17, 2013.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 11-083.

_____

**Per Curiam**.

{¶ 1} Respondent, Kevin Michael Hunt of Dayton, Ohio, Attorney Registration No. 0073405, was admitted to the practice of law in Ohio in 2001. On December 21, 2010, we suspended Hunt's license to practice law for six months for neglecting a client matter, failing to reasonably communicate with his clients regarding the matter, and failing to respond to a disciplinary investigation into alleged misconduct involving another client. *Dayton Bar Assn. v. Hunt*, 127 Ohio St.3d 390, 2010-Ohio-6148, 939 N.E.2d 1247.

{¶ 2} In October 2011, relator, Dayton Bar Association, charged Hunt with multiple violations of the Disciplinary Rules of the Code of Professional Responsibility[1] arising out of his representation of several clients in a personal-injury case.

{¶ 3} Based on the parties' stipulations of fact and the evidence submitted at the hearing, a panel of the Board of Commissioners on Grievances and

_____

1. On February 1, 2007, the Rules of Professional Conduct became effective, replacing the Code of Professional Responsibility in Ohio. Hunt's conduct occurred before February 1, 2007, and so it is governed by the Code of Professional Responsibility.

Discipline found that Hunt had taken on a case that he was not competent to handle, proceeded without adequate preparation, neglected the matter, intentionally failed to pursue the clients' lawful objectives, and led the clients to believe that their case remained pending when, in fact, summary judgment had been granted to the defendants. Citing numerous aggravating factors, including Hunt's pattern of misconduct, his failure to acknowledge the wrongful nature of that conduct, his absence of remorse, and the harm caused to a vulnerable client, the panel recommended that he be indefinitely suspended. The board adopted the panel's findings of fact, conclusions of law, and recommendation.

{¶ 4} Because we find that Hunt engaged in a pattern of neglect and incompetence that lasted for four years and resulted in the dismissal of his clients' case, failed to appreciate the gravity of his misconduct, and lied to the clients in order to conceal his neglect and incompetence, we adopt the board's findings of fact and misconduct and indefinitely suspend him from the practice of law in Ohio.

**Misconduct**

{¶ 5} While working at his father's law firm in August 2002, approximately one year after he was admitted to the practice of law, Hunt agreed to represent Jennifer and Matthew Pond and their daughter Sarah in a personal-injury matter. Mrs. Pond and Sarah were injured in an auto accident when a vehicle ("vehicle I") waiting to make a left turn was struck from behind by another vehicle ("vehicle II") and pushed across the center line into the Ponds' oncoming vehicle. In June 2004, Hunt filed a complaint against the driver of vehicle I and against the father of the driver of vehicle II. Hunt was under the mistaken belief that the driver of vehicle II could not be held legally responsible for the injuries caused by the accident because she was a minor.

{¶ 6} Mr. and Mrs. Pond gave their depositions in 2005 and were advised by Hunt that there would be a settlement conference in July of that year. Before

the settlement conference, however, both defendants moved for summary judgment. Hunt did not respond to either motion. He testified at the hearing in this case that he did not respond to the motion filed by the father of the minor driver, because he believed that the driver of vehicle I had caused the accident. He realized his mistake when he received the second motion for summary judgment, but again filed no response. The court granted both motions, and on July 14, 2005—just days before the settlement conference was to occur—dismissed the case. Rather than inform the Ponds of this fact, Hunt told them that the settlement conference had been canceled and that it would be rescheduled. He later assured Mrs. Pond that the case remained active.

{¶ 7} Although Hunt successfully moved the court for relief from one of the summary judgments in April 2006 and was granted 20 days to respond to the summary-judgment motion, he failed to avail himself of that opportunity. The court once again granted summary judgment in favor of the defendant. A Civ.R. 60(B) motion that Hunt filed in October 2006 was denied on the ground that it did not contain a proper certificate of service.

{¶ 8} Frustrated by Hunt's lack of communication, Mrs. Pond consulted with another attorney in November 2006. That attorney discovered that the Ponds' case had been dismissed in 2005. After he advised them of that fact and the fact that the statute of limitations had run on Mrs. Pond's claim, the Ponds retained him to pursue a malpractice action against Hunt for the loss of Mrs. Pond's claim and to pursue their daughter's personal-injury claim, which remained viable because she was a minor.

{¶ 9} On these facts, the board found that Hunt had violated DR 1-102(A)(4) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 6-101(A)(1) (prohibiting a lawyer from handling a legal matter that he is not competent to handle, without obtaining assistance from a lawyer who is competent to handle it), 6-101(A)(2) (prohibiting

a lawyer from handling a legal matter without adequate preparation), 6-101(A)(3) (prohibiting a lawyer from neglecting an entrusted legal matter), and 7-101(A)(1) (prohibiting a lawyer from intentionally failing to seek the lawful objectives of his client).

{¶ 10} We find that the record clearly and convincingly supports the board's findings of fact and misconduct and hereby adopt them.

### Sanction

{¶ 11} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 12} The board found a number of aggravating factors that weighed in favor of a harsh sanction, the first being Hunt's prior disciplinary sanction for similar conduct in his handling of a medical-negligence case. *See* BCGD Proc.Reg. 10(B)(1)(a). Though his misconduct in that case occurred after the misconduct at issue here, the board found that it was relevant because it demonstrated that Hunt had engaged in a pattern of misconduct involving multiple offenses. *See* BCGD Proc.Reg. 10(B)(1)(c) and (d). He acted with a dishonest or selfish motive when he lied to his clients about the status of the settlement conference in an effort to conceal his poor legal representation. *See* BCGD Proc.Reg. 10(B)(1)(b). And although Hunt stipulated to most of the factual allegations of relator's complaint, he failed to acknowledge the wrongful nature of his conduct, offered little insight into or explanation for his actions, and stipulated to only two of the alleged violations—that he was not competent to handle the Ponds' personal-injury matter and that he had failed to adequately

prepare their case. Hunt also caused harm to Mrs. Pond, a vulnerable client whose claims were extinguished because Hunt did not file suit against the true tortfeasor before the statute of limitations expired. *See* BCGD Proc.Reg. 10(B)(1)(h). The delay occasioned by Hunt's neglect and the resultant malpractice action left Mrs. Pond frustrated with the legal system.

**{¶ 13}** In contrast to the multiple aggravating factors, very little mitigation evidence was offered. The board did not find that any of the mitigating factors set forth in BCGD Proc.Reg. 10(B)(2) had been proven.

**{¶ 14}** Relator recommended that Hunt be disbarred from the practice of law in Ohio. Hunt argued in favor of a two-year suspension.

**{¶ 15}** In its report, the board cites several cases in which we have imposed suspensions ranging from one year with six months stayed to two years for comparable misconduct. *See, e.g.*, *Toledo Bar Assn. v. Hickman*, 107 Ohio St.3d 296, 2005-Ohio-6513, 839 N.E.2d 24 (imposing a one-year suspension with six months stayed on an attorney who neglected client matters, intentionally failed to seek the lawful objectives of his clients, and repeatedly lied to the clients about the status of their cases); *Cincinnati Bar Assn. v. Larson*, 124 Ohio St.3d 249, 2009-Ohio-6766, 921 N.E.2d 618 (imposing a two-year suspension with the second year stayed on conditions on an attorney who repeatedly misled one client about what he had accomplished on her behalf, neglected two other client matters, failed to return unearned fees to all three clients, and failed to cooperate in two of the resulting disciplinary investigations); *Cuyahoga Cty. Bar Assn. v. Glaeser*, 120 Ohio St.3d 350, 2008-Ohio-6199, 899 N.E.2d 140 (imposing a two-year suspension with one year stayed on an attorney who misled a client about having filed and settled a lawsuit on the client's behalf); and *Disciplinary Counsel v. Manning*, 111 Ohio St.3d 349, 2006-Ohio-5794, 856 N.E.2d 259 (imposing a two-year suspension on an attorney who deceived his clients for several years by telling them that he had filed a medical-malpractice case on their behalf when he

had not and by fabricating a purported settlement agreement to avoid being sued for legal malpractice).

{¶ 16} The board noted that in cases with these types of violations, an actual suspension of at least two years is typically imposed and that a lesser sanction is imposed only when significant mitigating factors are present. For example, Hickman (one-year suspension with six months stayed) had practiced law for 25 years with no prior disciplinary offenses, expressed remorse for his misconduct, cooperated in the disciplinary proceedings, and submitted references from two judges, a magistrate, and four attorneys attesting to his good character. *Hickman* at ¶ 10-11. Larson (two-year suspension with one year stayed) had nearly 20 years of experience with no disciplinary violations, produced medical evidence that he suffered from a debilitating sleep disorder that compromised his concentration and productivity during the time of his misconduct, and submitted favorable assessments from three judges who commended his performance in their courts and voiced no misgivings about his integrity. *Larson* at ¶ 1 and 20. Glaeser (two-year suspension with one year stayed) cooperated in the disciplinary investigation despite having serious health problems and candidly admitted to having misrepresented to his client that he had filed a complaint, when he had not. He also revealed that at the time of his misconduct, he was dealing with his son's recent murder. *Glaeser* at ¶ 10. And although we did not accord great weight to the mitigating evidence in *Manning* (two-year suspension), we acknowledged that he did not have a prior disciplinary record, made full and free disclosure to the board, cooperated in the disciplinary proceedings, and submitted three letters attesting to his professionalism and good character. *Manning* at ¶ 11 and 14.

{¶ 17} Because of the paucity of mitigating evidence and the multiple aggravating factors present in this case, including Hunt's lack of remorse, the board urges us to impose a greater sanction than we imposed in *Hickman*, *Larson*,

*Glaeser*, and *Manning* and recommends that we indefinitely suspend Hunt from the practice of law.

**{¶ 18}** Having reviewed the record and considered Hunt's misconduct, the lack of mitigating factors, and the significant aggravating factors—including Hunt's failure to appreciate the wrongfulness of his misconduct and the attitude of indifference he exhibited throughout the disciplinary proceedings—we adopt the board's recommended sanction.

**{¶ 19}** Accordingly, Kevin Michael Hunt is indefinitely suspended from the practice of law in Ohio. Costs are taxed to Hunt.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Pickrel, Schaeffer & Ebeling, and Andrew C. Storar, for relator.

Thomas J. Replogle, for respondent.

_____