**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as**
*Columbus Bar Assn. v. Rieser,* **Slip Opinion No. 2018-Ohio-3860.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-3860

COLUMBUS BAR ASSOCIATION *v*. RIESER.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus Bar Assn. v. Rieser,* Slip Opinion No. 2018-Ohio-3860.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Two-year suspension, with second year stayed on conditions.*

(No. 2017-1741—Submitted April 10, 2018—Decided September 26, 2018.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2017-006.

_____

**Per Curiam.**

**{¶ 1}** Respondent, David Paul Rieser, of Columbus, Ohio, Attorney Registration No. 0025247, was admitted to the practice of law in Ohio in 1980. On May 3, 1995, we publicly reprimanded him for neglecting two client matters. *Disciplinary Counsel v. Rieser*, 72 Ohio St.3d 130, 647 N.E.2d 1366 (1995). And on August 15, 2001, we suspended him for two years with 18 months of the

suspension stayed on conditions for neglecting two additional client matters. *Columbus Bar Assn. v. Rieser*, 93 Ohio St.3d 143, 753 N.E.2d 177 (2001), *reinstatement granted*, 95 Ohio St.3d 1211, 766 N.E.2d 992 (2002).

{¶ 2} In a February 8, 2017 complaint, relator, Columbus Bar Association, alleged that Rieser violated six professional-conduct rules in conjunction with his representation of a single client in a criminal matter.

{¶ 3} The parties submitted stipulations of fact, misconduct, and aggravating and mitigating factors and jointly recommended that Rieser be suspended from the practice of law for two years with one year of the suspension stayed on conditions. The matter proceeded to a hearing before a panel of the Board of Professional Conduct. The panel adopted the parties' stipulations of fact, misconduct, aggravating and mitigating factors, but recommended that Rieser be indefinitely suspended from the practice of law. The board adopted the panel's report in its entirety. Rieser objects, arguing that the board's recommended sanction is not supported by the law or facts, and relator agrees.

{¶ 4} Having independently reviewed the record and our precedent, we adopt the board's findings of fact and misconduct, sustain Rieser's objection, and suspend him from the practice of law for two years, with one year of the suspension conditionally stayed.

**Misconduct**

{¶ 5} In March 2012, Rieser was retained by a psychiatrist who had been indicted on felony counts of workers'-compensation fraud, theft, and tampering with records. Although they had agreed upon an initial payment of $30,000 for attorney fees, they did not execute a written fee agreement or discuss the rate, basis, or total amount of Rieser's fee. Rieser did not keep contemporaneous time records for the work that he performed on the client's behalf, nor did he send the client any billing statements. He also failed to inform the client that he did not maintain professional-liability insurance.

2

**{¶ 6}** After Rieser had received the client's initial payment of $30,000, he did not request any additional fees. Nonetheless, from June 25, 2012, to December 10, 2012, the client sent him eight checks, bringing Rieser's total compensation to $107,998.79. Rieser deposited $50,000 of the payments into his client trust account, deposited approximately $23,000 into his business account, and endorsed two checks totaling nearly $25,000 to a local art gallery. He did not maintain a client ledger or conduct monthly reconciliations of the funds held in his client trust account.

**{¶ 7}** Rieser understood that one of his client's primary goals was to maintain his medical license. With the client's consent, Rieser sought advice from another attorney, who stated that the client would have a better chance of achieving that goal if the client were convicted of a misdemeanor instead of a felony offense. In December of 2012, the client pleaded guilty to one misdemeanor count of workers'-compensation fraud, and the remaining charges were dismissed. The client reimbursed the Bureau of Workers' Compensation the $257.40 he was found to have overbilled the bureau plus the $70,497.68 cost of the resulting investigation.[1] No other sanctions were imposed.

**{¶ 8}** The client filed a grievance against Rieser in April 2015. Rieser failed to respond to relator's initial request for the client's file and twice failed to appear for deposition.

**{¶ 9}** On these facts, the parties stipulated and the board found that Rieser violated Prof.Cond.R. 1.4(c) (requiring a lawyer to inform the client if the lawyer does not maintain professional-liability insurance), 1.5(a) (prohibiting a lawyer from making an agreement for, charging, or collecting an illegal or clearly excessive fee), 1.5(b) (requiring an attorney to communicate the nature and scope of the representation, and the basis or rate of the fee and expenses within a

---

[1] The presiding judge ordered the client to pay restitution to the Bureau of Workers' Compensation, but also noted that the restitution had been paid by the date of the sentencing hearing.

reasonable time after commencing the representation unless the lawyer has regularly represented the client and will charge the client on the same basis as previously charged), 1.15(a) (requiring a lawyer to hold the property of clients in an interest-bearing client trust account, separate from the lawyer's own property), 1.15(a)(2) (requiring a lawyer to maintain a record for each client that sets forth the name of the client; the date, amount, and source of all funds received on behalf of the client; and the current balance for each client), 1.15(c) (requiring a lawyer to deposit advance legal fees and expenses into a client trust account, to be withdrawn by the lawyer only as fees are earned or expenses incurred), and 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation).

{¶ 10} No one contests these findings of fact and misconduct, and we adopt them as our own.

### Recommended Sanction

{¶ 11} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, relevant aggravating and mitigating factors, and the sanctions imposed in similar cases. *See* Gov.Bar R. V(13)(A).

{¶ 12} As aggravating factors, the parties stipulated and board found that Rieser has been disciplined on two prior occasions and committed multiple offenses in this case. *See* Gov.Bar R. V(13)(B)(1) and (4). The board also found that Rieser failed to cooperate with relator's investigation and that he has yet to apply for termination of the monitored probation imposed in his second disciplinary case. *See* Gov.Bar R. V(13)(B)(5) and V(21)(D).

{¶ 13} In mitigation, Rieser submitted six letters from judges and lawyers who attested to his good character and reputation. *See* Gov.Bar R. V(13)(C)(5). Rieser also established the existence of a qualifying mental-health disorder by submitting evidence that (1) he had been diagnosed with situational anxiety and

4

depression following his father's death, (2) those conditions contributed to his failure to cooperate with relator's investigation, (3) he successfully completed a one-year course of treatment, and (4) he received a positive prognosis from a qualified healthcare professional. *See* Gov.Bar R. V(13)(C)(7). The board also attributed mitigating effect to Rieser's good-faith effort to issue a partial refund to his client—though the client rejected his offer—and subsequent placement of $50,000 in escrow pending the outcome of this proceeding. *See* Gov.Bar R. V(13)(C)(3).

{¶ 14} Although the parties agreed that the client had paid excessive fees, they could not agree on a reasonable fee for Rieser's services and submitted conflicting evidence on that issue. Relator's expert testified that $15,000 would have been a reasonable fee for Rieser's services. But relator's expert also conceded that a reasonable fee for that type of case could vary among criminal-defense lawyers in Franklin County, stating, "I can tell you with some certainty that it would start at [$]5,000, and that I think a reasonable fee would probably go above 20-, perhaps to 30-." On the other hand, Rieser's expert offered that a reasonable "flat fee" for an experienced criminal practitioner to handle a case of this kind in Franklin County could range from $40,000 to $80,000. Given the status of this client and the favorable result that Rieser obtained, he believed that a fee in the amount of $60,000 would have been entirely reasonable in this case.

{¶ 15} After considering the experts' testimony and the factors set forth in Prof.Cond.R. 1.5(a) for determining the reasonableness of a fee, the board determined that a reasonable fee for Rieser's representation in this case lies somewhere between the $30,000 conceded by relator's expert and the $60,000 suggested by Rieser's expert.[2] Therefore, the board recommended that Rieser be

---

[2] Factors to be considered under Prof.Cond.R. 1.5(a) include:

ordered to remit the $50,000 held in escrow to his client as restitution in this case.

{¶ 16} Citing Rieser's acceptance of a fee that was approximately double what it should have been, his use of those funds for personal expenditures, his failure to acknowledge the wrongful nature of his conduct, and his "lack of regret," the board rejected the parties' recommendation that Rieser be suspended from the practice of law for two years with one year stayed on conditions. Instead, citing *Columbus Bar Assn. v. Watson*, 144 Ohio St.3d 317, 2015-Ohio-4613, 42 N.E.3d 752, the board, following the panel's reasoning, recommends that we indefinitely suspend Rieser from the practice of law and order him to make restitution of $50,000 to the affected client.

**Rieser's Objection to the Recommended Sanction**

{¶ 17} Rieser objects to the board's recommendation that he be indefinitely suspended from the practice of law. He argues that the board's reliance on *Watson* is misplaced and that the evidence adduced at the hearing and our decision in *Akron Bar Assn. v. DeLoach*, 143 Ohio St.3d 39, 2015-Ohio-494, 34 N.E.3d 88, support the imposition of the parties' jointly recommended sanction—a two-year suspension with the second year stayed on conditions. Relator agrees with Rieser's

---

(1) the time and labor required, the novelty and difficulty of the questions     involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

objection and urges this court to consider imposing a lesser sanction than the indefinite suspension recommended by the board.

**{¶ 18}** In *Watson*, an attorney who had previously been disciplined for failing to deposit client funds into his client trust account was charged with additional rule violations for engaging in the same type of misconduct in two additional client matters and charging a clearly excessive fee. In addition to the charged misconduct, the evidence also showed that Watson filed an objection to the debtor's plan in a bankruptcy proceeding based on incorrect information mistakenly obtained from an unrelated case and failed to appear as counsel for his clients.

**{¶ 19}** While Watson made a timely, good-faith effort to make restitution to one set of clients and exhibited a cooperative attitude toward the disciplinary proceedings, he also failed to refund any of the other clients' retainer—despite having admitted that he charged them an excessive fee—and acted with a selfish motive. In addition, the board found that Watson's own testimony raised "serious doubts about his ability to effectively and ethically practice law." *Watson*, 144 Ohio St.3d 317, 2015-Ohio-4613, 42 N.E.3d 752, at ¶ 10.

**{¶ 20}** In *Watson*, the misconduct at issue mirrored the misconduct that we had sanctioned only two years earlier. In contrast, Rieser's past misconduct involved different offenses—mainly the neglect of client matters—and occurred more than ten years before he accepted the excessive fee at issue in this case.

**{¶ 21}** While Watson's clients became dissatisfied during or immediately after the course of Watson's representation, Rieser's client repeatedly expressed his satisfaction with Rieser's work. Indeed, witnesses for both parties to this proceeding agreed that Rieser provided quality representation and likely obtained the best possible result for his client under the circumstances. And when Rieser's client filed his grievance, he challenged only the reasonableness of his attorney's fee. But Rieser's uncontroverted testimony shows that after the client made the agreed $30,000 payment, the client insisted on sending significant monthly

payments to Rieser—even though Rieser told him that "it wasn't necessary" and suggested that they wait to see how the case progressed before assessing the need for additional fees.  Indeed, Rieser's misconduct is unusual in that he did not *charge* a clearly excessive fee, so much as he *accepted* the client's voluntary—but excessive—payments.  And unlike *Watson*, the board made no finding that Rieser had acted with a selfish or dishonest motive.  Moreover, Rieser presented letters from three judges, two attorneys, and one retired judge attesting to his professionalism and his commitment to his clients.  Watson presented no evidence to establish his good character.

{¶ 22} Based on the significant factual differences between this case and *Watson*, Rieser argues that an indefinite suspension is not necessary to protect the public from future harm.  On the contrary, Rieser contends that the similarities between his misconduct and that of DeLoach, his acceptance of full responsibility for his actions, and his efforts to improve the administrative management of his law practice weigh in favor of a two-year suspension with the second year conditionally stayed.  We agree.

{¶ 23} In *Akron Bar Assn. v. DeLoach*, 143 Ohio St.3d 39, 2015-Ohio-494, 34 N.E.3d 88, we imposed a two-year suspension with the second year conditionally stayed on a previously disciplined attorney who charged a clearly excessive fee, failed to deposit a client's retainer into her client trust account, and failed to maintain required records regarding those client funds.  But in addition to engaging in misconduct comparable to Rieser's, DeLoach was also found to have neglected an incarcerated client's legal matter.  Specifically, nearly two years after being asked to investigate a client's murder conviction, DeLoach filed a single, three-page motion for resentencing and then failed to respond to the state's memorandum in opposition.  We attributed some aggravating effect to the fact that DeLoach had engaged in that neglect while her first disciplinary action (for engaging in dishonest conduct during a disciplinary action) was pending.  And

while we recognized that DeLoach did not act with a dishonest or selfish motive and cooperated in the disciplinary proceedings, we attributed little mitigating effect to her character-and-reputation evidence.

{¶ 24} Here, in addition to the mitigating factors found by the board, Rieser has stipulated that he engaged in the charged misconduct and acknowledged that the additional fees that his client paid were excessive. He testified that he has reduced his case load and is now focused on representing clients in municipal courts. He has also worked with his legal counsel in this case to improve his office- and trust-account management practices and intends to continue psychological treatment to help him manage his day-to-day stress.

{¶ 25} Based on the foregoing, we agree that the facts of this case are more in line with those of *DeLoach* than they are with *Watson*. We therefore sustain Rieser's objection and find that a two-year suspension with one year stayed on conditions is the appropriate sanction for Rieser's misconduct.

{¶ 26} Accordingly, David Paul Rieser is suspended from the practice of law in Ohio for two years, with one year of the suspension stayed on the conditions that he pay $50,000 in restitution to the affected client within 30 days and that he engage in no further misconduct. If Rieser fails to comply with the conditions of the stay, the stay will be lifted and he will serve the full two-year suspension. Costs are taxed to Rieser.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, FISCHER, DEWINE, and DEGENARO, JJ., concur.

_____

James E. Arnold & Associates, L.P.A., and David C. Winters; Poling Law and G. Michael Romanello; Lori J. Brown, Bar Counsel, and A. Alysha Clous, Assistant Bar Counsel, for relator.

Kegler, Brown, Hill & Ritter, L.P.A., and Jonathan E. Coughlan, for respondent.

————————————